**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>**GIFTY SAMUELS,**<br><br>            Debtor | **Chapter 11**<br>**Case No. 06-11656-FJB** |

**MEMORANDUM OF DECISION ON**
**MOTION OF DEUTSCHE BANK FOR SUMMARY JUDGMENT ON**
**DEBTOR'S OBJECTION TO ITS PROOF OF CLAIM**

By the motion before the Court, Deutsche Bank National Trust Company, as trustee under a pooling and servicing agreement of a certain mortgage investment trust ("Deutsche Bank"), seeks summary judgment as to the objection filed by Chapter 11 debtor Gifty Samuels to its secured claim. Deutsche Bank's claim is based on the contention that Deutsche Bank is the present holder of a promissory note given by Samuels to Argent Mortgage Company, LLC ("Argent"), and the owner of the mortgage given by Samuels to Argent to secure the promissory note. By her objection, Samuels now challenges not the validity of the underlying note and mortgage but only Deutsche Bank's claim to be the holder of the note and owner of the mortgage and thus its standing to enforce these. Finding the motion for summary judgment to be well-supported, the Court will grant summary judgment and overrule the objection to claim.

**PROCEDURAL HISTORY**

Gifty Samuels filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 1, 2006, thereby commencing this bankruptcy case. Upon discovery that her debt exceeded the eligibility limits for Chapter 13, she moved to convert her case to one under Chapter 11, and the Court granted that motion on August 10, 2006. She has remained a debtor in possession under Chapter 11 since that time.

AMC Mortgage Services, Inc., as loan servicer for Argent, filed a proof of a claim in the

case on June 23, 2006 for $292,206.37, and an amended proof of claim on September 18, 2006 for $294,466.50.[1]  Both indicated that the claim in question was secured, but neither included an attached promissory note or mortgage or identified the property securing the debt.

The property securing this debt was certain real property owned by Samuels and located at 316B, Essex Street, Lynn, Massachusetts.  AMC Mortgage Services, Inc., as loan servicer for Argent, moved for relief from the automatic stay as to this property on April 2, 2007.  [Doc. #143]  After a hearing, the court denied the motion without prejudice to renewal but, in the same order, expressly permitted AMC Mortgage Services, Inc. to file an affidavit of noncompliance seeking further court action if the Debtor, commencing in July 2007, failed to make timely monthly mortgage payments.  [Doc. #198]

On November 9, 2007, Citi Residential Lending, Inc. ("Citi Residential"), by Mario Vasquez, a duly authorized agent, filed such an affidavit of noncompliance. [Doc. #239]  In the affidavit, Mr. Vasquez stated that Citi Residential "is now the servicer for Argent Mortgage Company" and that Samuels had failed to make her monthly mortgage payments.  On November 23, 2007, the Court held a hearing on the affidavit and the underlying motion for relief, resulting in entry of an agreed order of that same date, granting Citi Residential relief from the automatic stay to foreclose, effective January 31, 2008. [Doc. #251]

On February 1, 2008, in an Omnibus Objection to claims, Samuels objected to the amended claim of AMC Mortgage Services (Claim No. 3-2), stating that "[t]his claim alleges a security interest but fails to identify the property securing the claim or to attach a copy of any documentation in support of the claim." [Doc. #267]  Citi Residential Lending filed a response to the objection [Doc. #294] that identified the property in question as the real property at 316B Essex Street, Lynn, Massachusetts, and included as attachments the relevant promissory note and mortgage.  Just prior to the preliminary hearing on the objection, the Debtor filed a report

---

[1] The original proof of claim appears on the claims register as number 3-1, the amended as 3-2.

2

and hearing agenda that, with respect to this claim, stated:

> A response was filed by Citi Residential Lending, Inc. regarding this claim []. The response includes a copy of the Note and Mortgage, as requested in the objection, but fails to demonstrate that AMC or Citi Residential is the actual holder of the note and mortgage, such as by attaching a copy of an assignment(s). The response also fails to provide a complete Loan History or to provide an affidavit of the keeper of records regarding the amount owed as of the date of the response.

The Debtor thus essentially retracted her original grounds for objecting—failure to identify the property and lack of supporting documentation—and raised new grounds: lack of evidence that AMC or Citi Residential was the actual holder of the promissory note and mortgage. The court held a preliminary hearing on the objection as so amended on April 15, 2008 and a continued hearing on June 20, 2008. The court then issued a procedural order requiring (i) that the claimant file documentation establishing true ownership of the note and mortgage that form the basis for its claim and then (ii) that the Debtor file a response indicating whether it accepts the evidence as establishing the validity of the claim, including (in the event of rejection) an explanation as to why.

The documentation required by the first prong of this order was filed by Deutsche Bank National Trust Company, as Trustee, in trust for the registered holders of Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005-W3 ("Deutsche Bank"). In the response to which the documentation was attached [Doc. # 363],[2] Deutsche Bank claimed to be the present holder of the mortgage at issue. The Debtor filed a response indicating that she did not accept the documents adduced as evidence establishing the validity of the lien. [Doc. # 366]

On August 19, 2008, Citi Residential, as loan servicer and attorney-in-fact for Deutsche Bank, then moved to amend proof of claim No. 3, stating that AMC Mortgage Services, Inc. had incorrectly named Argent as the creditor in that proof of claim. [Doc. #377] Citi Residential said in the motion that in fact the loan is held by Deutsche Bank, and therefore that the proof of claim

---

[2] Deutsche Bank also filed a Supplemental Response [Doc. #364].

3

should name Deutsche Bank as the creditor. The motion further stated that effective October 1, 2007, Citi Residential had replaced AMC Mortgage Services, Inc. as servicer of the loan. On October 21, 2008, and over the Debtor's objection, the court granted this motion. Accordingly, on October 24, 2008, Deutsche Bank National Trust Company, as Trustee, in trust for the registered holders of Argent Securities Inc., Asset-Backed Pass- Through Certificates, Series 2005-W3, filed proof of claim No. 14-2, complete with supporting documents, as an amendment to claim No. 3-2. The supporting documents, filed as exhibits to the proof of claim, included (i) the Samuels Note, (ii) the Samuels Mortgage, (iii) on the Samuels Mortgage, a registry stamp constituting evidence that the Mortgage was recorded on August 23, 2005; (iv) a Confirmatory Assignment of the Samuels Mortgage and Note from Argent to Deutsche Bank, dated August 4, 2008, bearing a registry stamp constituting evidence that the Confirmatory Assignment was recorded on August 11, 2008; and (v) a Limited Power of Attorney from Argent to Citi Residential, dated October 18, 2007 (the "2007 LPA").

On September 29, 2008, while the motion to amend proof of claim was pending, and pursuant to FED. R. BANKR. P. 3001(e)(2), Citi Residential filed evidence—essentially a notice— of transfer of claim No. 3 (as amended) other than for security [Doc. # 396]. The notice indicates that Claim No. 3 was transferred from AMC Mortgage Services, Inc., as loan servicer for Argent, to Citi Residential, as loan servicer and attorney in fact for Deutsche Bank. The clerk promptly then notified AMC Mortgage Services, Inc. of the evidence of transfer and established a deadline for the alleged transferor to object, failing which the transferee would be substituted for the original claimant without further order of the court. AMC Mortgage Services, Inc. filed no objection, and the time to object has long since passed.

On December 11, 2008, Deutsche Bank then filed the present Motion for Summary Judgment as to Claim No. 14 [Doc. #415].[3] Deutsche Bank construes the Debtor's objection to

---

[3] A motion for summary judgment may appropriately be filed as to an objection to claim. An objection to claim is a contested matter. Pursuant to FED. R. BANKR. P. 9014(c), Rule 7056

4

Claim No. 3 as in fact an objection to Claim No. 14 (because Claim No. 14 is an amendment to Claim No. 3) and, by its motion for summary judgment, seeks an order overruling the objection and allowing Claim No. 14.  In support of the motion, Deutsche Bank submitted the affidavits of Ronaldo Reyes, Diane E. Tiberend, and Margarita Guerreo and the exhibits authenticated by these affiants.  The Debtor has filed an opposition to the motion and, in support of her opposition, an unauthenticated deposition of Tamara Price.[4]  Price is a Citi Residential employee that was deposed in another case.  The court held a hearing on the motion on March 31, 2009 and took the matter under advisement.

**ARGUMENTS OF THE PARTIES**

This contested matter has evolved in two significant respects since its inception with the Debtor's filing of her objection to Claim No. 3.  First, the underlying claim has been amended, such that the claim in issue is no longer Claim No. 3, filed by AMC Mortgage Services, Inc., as loan servicer for Argent, but Claim No. 14-2, filed by Deutsche Bank, with Deutsche Bank claiming to be the successor in interest to Argent as holder of the same promissory note and mortgage that formed the basis of the Claim No. 3.  Second, the grounds of objection have changed:  the Debtor's original objection—that the proof of claim "alleges a security interest but fails to identify the property securing the claim or to attach a copy of any documentation in support of the claim"—has been satisfied, the note and mortgage having been adduced and the property having been identified.  Instead, the objection has now become a challenge to Deutsche Bank's contention that it holds the promissory note and owns the mortgage on which the claim is based.  It is this particular objection, as it is leveled against Claim No. 14-2, that is

---

of the Federal Rules of Bankruptcy Procedure applies to contested matters.   Rule 7056 in turn makes FED. R.  CIV. P. 56 applicable.

[4]  In her opposition, the Debtor also asks the court to take judicial notice of the entire record of this case, but she fails to identify particular documents or parts of the record of which she would have the court take judicial notice.

5

Case 06-11656    Doc 493    Filed 07/06/09    Entered 07/06/09 16:45:20    Desc Main
Document      Page 6 of 20

presently before the court as the subject of Deutsche Bank's motion for summary judgment. Neither party disputes that the issue so framed is properly before the Court, the lack of a formal objection to Claim No. 14-2 notwithstanding.

Deutsche Bank's argument in support of summary judgment is as follows. Pursuant to a certain Mortgage Loan Purchase and Warranties Agreement, the following sequence of transfers occurred: Argent, as the originator of the loan and payee and original holder of the note, sold the loan in question to Ameriquest Mortgage Company LLC, which, in turn sold the loan to Argent Securities, Inc., which deposited the loan into the ARSI Series 2005-W3 Pool subject to the Pooling and Servicing Agreement ("PSA") dated as of October 1, 2005 between Argent Securities, Inc. as Depositor, Ameriquest as Master Servicer, and Deutsche Bank, as Trustee. Accordingly, Argent endorsed the original promissory note in blank, without recourse—thus converting it into a bearer instrument, negotiable by transfer of possession alone—and delivered it to Deutsche Bank as pool Trustee, which has had actual physical custody of the note since August 18, 2005. The mortgage followed a similar path, twice: first on August 18, 2005, when Argent Mortgage Company LLC, the original mortgagee, assigned the mortgage in blank and delivered it to Deutsche Bank as pool Trustee; and a second time on August 4, 2008, when Citi Residential, acting under a limited power of attorney from Argent, executed on behalf of Argent a confirmatory assignment of the mortgage to Deutsche Bank as pool Trustee and recorded the same in the applicable registry of deeds. In addition, Deutsche Bank argues, Argent ratified the assignment of the mortgage to Deutsche Bank by raising no objection to the court's notice of evidence of transfer of claim.

The Debtor argues that Deutsche Bank must show that it is the lawful owner of both the note and the mortgage. The Debtor does not dispute that the promissory note was indorsed in blank and transferred to Deutsche Bank and that Deutsche Bank is now, and since August 18, 2005 has been, in possession of the note. The Debtor instead concentrates her opposition on the mortgage, arguing that there exist several defects in Deutsche Bank's chain of title, or at

6

least in Deutsche Bank's proof of the chain of title. First, the Debtor argues that Argent's original assignment of the mortgage in blank was ineffective because a mortgage is an interest in land that, under the statute of frauds, requires a conveyance in writing that identifies the assignee; Argent's conveyance in blank, though in writing, does not identify an assignee and therefore, the Debtor concludes, was ineffective.

Second, the Debtor contends that the PSA required that all mortgages acquired thereunder had to be funneled to Deutsche Bank, as pool trustee, through the entity designated by the PSA as "depositor," ARSI. A failure to follow this protocol—such as by direct assignment of the mortgage from the loan originator to the pool trustee, bypassing the depositor—would, the Debtor contends, constitute a breach of the PSA, a breach of fiduciary obligations under the PSA to investors, a breach of federal regulations, and an act giving rise to unfavorable tax consequences for the investors. The Debtor argues that because the mortgage assignments described by Deutsche Bank do not indicate that title passed to Deutsche Bank through the depositor, the assignments of the mortgage must be invalid.

Third, the Debtor argues that the confirmatory assignment is invalid because the vice-president of Citi Residential who executed that assignment, a Ms. Tamara Price, indicated in a deposition in an unrelated case that (1) she signs documents presented to her for signing without knowing what she is signing and (2) she signs these documents outside the presence of a notary, after which the documents are forwarded to a notary for completion. The Debtor further argues that Price patently lied when she recited in the Confirmatory Assignment that the original assignment "was lost"; the assignment in blank was produced in this proceeding and therefore was not lost. The Debtor does not elaborate on the consequences or import of these allegations. Nor does he dispute that Ms. Price had authority to execute the assignment and that she actually did execute it.

Fourth, the Debtor argues very briefly that, because the execution and recording of the confirmatory assignment occurred after she filed her bankruptcy petition, these acts constituted

7

violations of the automatic stay and of 11 U.S.C. § 549 (permitting a trustee to avoid certain postpetition transfers). In support of this argument, the Debtor cites *In re Beaulac*, 298 B.R. 31 (Bankr. D. Mass. 2003) without elaboration. She offers no explanation as to how the postpetition transfer of a mortgage already in existence and previously recorded can constitute a transfer of an asset of the estate or a violation of the automatic stay. She further suggests that she has the power to avoid the "unauthorized postpetition conveyance" but does not explain how or on what grounds and has not moved to avoid the conveyance.

**SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED .R. CIV. P. 56(c). Where, as here, the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under FED. R. CIV. P. 50(a). *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact. If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e); *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989). The court makes no findings of fact but only determines whether there exists a genuine issue of material fact and, if not, whether, on the uncontroverted facts, the moving party is entitled to judgment as a matter of law.

**DISCUSSION**

    a. **Burden of Proof**

The present motion seeks summary judgment as to a proof of claim. The burdens with respect to proofs of claim were summarized by Judge Somma in *In re Long*, 353 B.R. 1, at 13 (Bankr. D. Mass. 2006):

> A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim. FED. R. BANKR. P. 3001(f); see also *Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.),* 993 F.2d 915, 925 (1st Cir.1993). In order to rebut this prima facie evidence, the objecting party must produce "substantial evidence." *United States v. Clifford (In re Clifford),* 255 B.R. 258, 262 (D. Mass.2000) (*Hemingway Transport,* 993 F.2d at 925). If the objecting party produces substantial evidence in opposition to the proof of claim and thereby rebuts the prima facie evidence, the burden shifts to the claimant to establish the validity of its claim. *Hemingway Transport,* 993 F.2d at 925 ("Once the trustee manages the initial burden of producing substantial evidence . . . the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim."). Where the proof of claim is not filed in accordance with the Federal Rules of Bankruptcy Procedure, the proof of claim does not constitute prima facie evidence of the validity and amount of the claim, and therefore the burden of proof rests at all times on the claimant.
>
> In order for a proof of claim to be executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, it must satisfy (among other things) two requirements set forth in Rule 3001 itself. First, "when a claim ... is based on a writing, the original or a duplicate shall be filed with the proof of claim." FED. R. BANKR. P. 3001(c). Second, "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." FED. R. BANKR. P. 3001(d).

Deutsche Bank contends that its amended proof of claim (No. 14-2) enjoys prima facie validity, and that the Debtor has not rebutted this prima facie validity with substantial evidence or any evidence at all. The Debtor disagrees, arguing that the proof of claim was not supported by documents showing a complete chain of title and therefore does not constitute prima facie evidence of the claim, such that the burden rests from the start on the claimant.

9

The Court agrees with the Debtor: the documents attached to Proof of Claim No. 14-2—in relevant part, the Note, the Mortgage, the Confirmatory Assignment, and the 2007 LPA—do not, by themselves, establish the necessary chain of title.  The Note and Mortgage are in fact the underlying documents on which the claim is based, but they identify Argent as payee and mortgagee, not Deutsche Bank.  Deutsche Bank attempted to show that it now holds the rights originally given to Argent by attaching the Confirmatory Assignment to its proof of claim.  The Confirmatory Assignment, being an assignment in writing from Argent to Deutsche Bank of all rights under the Note and Mortgage, would suffice but for one problem: its validity is contingent on the limited power of attorney pursuant to which Citi Residential executed it for Argent, but the 2007 LPA that was attached to the proof of claim does not authorize the particular type of mortgage assignment that was involved in the Confirmatory Assignment.

The 2007 LPA expressly authorizes Citi Residential to execute, on behalf of Argent, only two kinds of mortgage assignment:  (i) "the assignment of any Mortgage or Deed of Trust and the related Mortgage Note, *in connection with the repurchase of the mortgage loan secured and evidenced thereby*," and (ii) "the full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby *in conjunction the refinancing thereof*."[5]  The Confirmatory Assignment was not executed in connection with the repurchase of a mortgage loan or the refinancing of this loan, and the 2007 LPA does not authorize mortgage assignments of any other kind.  A further paragraph in the 2007 LPA authorizing Citi Residential to foreclose on mortgages is not an authorization to execute assignments of mortgages, even where the assignment would facilitate a foreclosure of the mortgage.[6]  Where the 2007 LPA narrowly circumscribed the two types of mortgage assignment it did authorize Citi Residential to execute,

---

[5] 2007 LPA (attached as Exhibit 4 to Proof of Claim No. 14-2), at ¶¶ 6 and 7 (emphasis added).

[6] Judge Feeney reached this same conclusion with respect to identical language in another limited power of attorney from Argent to Citi Residential.  See *In re Hayes*, 393 B.R. 259, 268, 270 (Bankr. D. Mass. 2008).

10

the further grant of authority to foreclose should not be construed broadly to authorize additional types of mortgage assignment.

Consequently, the documents submitted with the proof of claim do not by themselves show a valid assignment of rights from Argent to Deutsche Bank and do not fully support the asserted claim. It follows that the proof of claim is not supported by documents adequate to establish the assignment of rights on which it is based, and therefore that the claim does not enjoy prima facie validity. In the alternative, whatever prima facie validity the claim initially enjoyed was rebutted by the Debtor's pointing out of the defect in the chain of title that was evident in the documents submitted with the proof of claim. Either way, for purposes of the present motion, the proof of claim does not enjoy prima facie validity, and the burden is on the claimant, Deutsche Bank, to establish that it now holds the rights given by the Debtor to Argent in the Note and Mortgage.

### b. The Factual Record

The evidence adduced in support of summary judgment, when construed in the light most favorable to Samuels, shows the following. There are no genuine issues as to the material facts.

On August 18, 2005, Samuels, as owner of the real property located at 316B Essex Street, Lynn, Massachusetts ("the Property"), executed in favor of Argent Mortgage Company LLC, as lender, a promissory note ("the Note") in the original principal amount of $272,000 and, to secure repayment of the note, a mortgage on the Property ("the Mortgage"). The Mortgage was recorded with the Essex South Registry of Deeds on August 23, 2005.

On the same day that it originated the Samuels loan, Argent endorsed the Note in blank and also executed a written assignment in blank—*i.e.*, without designation of an assignee—of the Note and Mortgage ("the Assignment"). Also on the same day, Argent transmitted the Note, Mortgage, and Assignment to Deutsche Bank in its capacity as custodian of Argent's original

11

collateral files.

Under a Mortgage Loan Purchase and Warranties Agreement ("MLPWA")[7] dated January 2, 2003 between Argent and its affiliate, Ameriquest Mortgage Company, Inc., Argent regularly and systematically sold and transferred the loans that it originated to Ameriquest for securitization purposes.  The MLPWA did not itself effectuate conveyance or sale of any specific loan; under section 2(a) of the MLPWA, a further act would be necessary to effectuate a sale pursuant to the MLPWA:  specifically, the execution of an Assignment and Conveyance Agreement.  From the affidavit of Diane Tiberand, a senior vice president of ACC Capital Holdings Corporation, the parent company of both Argent and Ameriquest, it is clear that both Argent and Ameriquest believe that the Samuels loan was conveyed by Argent through Ameriquest to Argent Securities, Inc. ("ARSI") to Deutsche Bank.  However, Deutsche Bank has adduced no evidence that the Samuels loan was among those that Argent sold and transferred to Ameriquest, either under the MLPWA or otherwise.

Ameriquest securitized its mortgage loans through one of two corporate vehicles; in the case of the Samuels loan, the vehicle Ameriquest used was ARSI.  Pursuant to and through a Mortgage Loan Purchase Agreement dated October 26, 2005 ("MLPA") between Ameriquest and ARSI,[8] Ameriquest sold the Samuels loan—or at least whatever interest Ameriquest had therein—to ARSI for subsequent deposit by ARSI into the ARSI Series 2005-W3 pool trust.  The sale and transfer of the loan from Ameriquest to ARSI was effectuated by the MLPA itself, which was not merely an agreement to sell but also the actual written instrument of conveyance.  Thus, section 1 of the MLPA states, "[t]he Seller hereby sells, and the Purchaser hereby purchases, as of October 28, 2005, certain . . . residential mortgage loans."  The loans in question were identified in a Closing Schedule executed pursuant to Section 2 of the MLPA.

---

[7] Tiberand Affidavit [Doc. 420], Exhibit 1.

[8] The Mortgage Loan Purchase Agreement of October 26, 2005 is attached as Exhibit C to the affidavit of Ronaldo Reyes [Doc. 418].

12

The Samuels loan was listed on the closing schedule as Loan No. 83442632, which is the loan number that appears on both the Note and the Mortgage.

ARSI then deposited the Samuels Loan, or whatever interest ARSI had in that loan, into the ARSI Series 2005-W3 pool trust by transfer to Deutsche Bank as trustee.  The deposit into the pool trust was done pursuant to a Pooling and Servicing Agreement dated October 1, 2005 ("the PSA") among ARSI, Ameriquest, and Deutsche Bank.  Under the PSA, ARSI, as Depositor, deposited certain designated mortgage loans, including the Samuels loan, into the pool; Ameriquest, as Master Servicer, agreed to be responsible for servicing of the loans, either itself or through one or more subservicers; and Deutsche Bank agreed to serve as trustee to hold legal title to the pooled mortgage loans for the benefit of investors in the pool.  ARSI sold and deposited the Samuels loan (and 9,909 other mortgage loans) into the ARSI Series 2005-W3 pool on October 28, 2005.  The PSA itself, in conjunction with the schedule of mortgages deposited through it into the pool trust, served as a written assignment of the designated mortgage loans, including the mortgages themselves.  Thus in section 2.01, the PSA states: "The Depositor [ARSI], concurrently with the execution and delivery hereof, *does hereby transfer*, assign, set over and otherwise convey to the Trustee [Deutsche Bank] without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to the Mortgage Loans identified on the Mortgage Loan Schedule[.]" (Emphasis added.)  Per Section 2 of the MLPA, the Mortgage Loan Schedule for the PSA was the same document as the Closing Schedule executed pursuant to Section 2 of the MLPA, on which was listed the number of the Samuels Loan.

Except only as set forth in the following sentence, Deutsche Bank has had and continues to have possession of the Note and Mortgage evidencing the Samuels loan since August 18, 2005, first as custodian of Argent's original collateral files and then, from and after October 28, 2005, as trustee of the ARSI Series 2005-W3 pool for the benefit of certificate

13

holders of the trust. In August 2008, Deutsche Bank relinquished physical custody of the collateral file, including the Note, to Citi Residential for purposes of an evidentiary hearing scheduled for August 20, 2008. Citi Residential had by then become servicer of the loan for Deutsche Bank. The collateral file, including the Note, remains in Citi Residential's physical custody for the benefit of Deutsche Bank.

On October 18, 2007, Argent executed a limited power of attorney ("the 2007 LPA") under which it made Citi Residential its attorney-in-fact for certain purposes. In relevant part, the 2007 LPA gave Citi Residential

> full power and authority to sign, execute, acknowledge, deliver, file for record, and record any instrument on its behalf and to perform such other act or acts as may be customarily and reasonably necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and "Deeds of Trust", respectively) and promissory notes secured thereby (the "Mortgage Notes").[9]

The enumerated transactions include, in relevant part:

> (6) The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.
>
> (7) The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction the refinancing thereof.
>
> (8) With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure . . . .[10]

On August 4, 2008, Argent, acting through Citi Residential as attorney in fact for Argent, executed a confirmatory assignment of the Samuels Mortgage to Deutsche Bank. The document was signed for Citi Residential by its vice president Tamara Price. The Confirmatory Assignment states that it was effective as of April 14, 2006. In the confirmatory assignment, Ms.

---

[9] 2007 LPA.

[10] 2007 LPA, ¶¶ 6, 7, and 8.

14

Price also stated that the confirmatory assignment was being executed with intent "to replace the original assignment which due to inadvertence and/or mistake was lost[.]"[11] Citi Residential recorded this confirmatory assignment in the Essex South Registry of Deeds on August 11, 2008. Though the Mortgage itself had previously been recorded, no earlier assignment of the Mortgage had been recorded.

On December 5, 2008, Argent executed another limited power of attorney ("the 2008 LPA") under which it made Citi Residential its attorney-in-fact for certain purposes. The 2008 LPA stated that it was effective retroactively to September 1, 2007, and that Argent ratified any and all actions theretofore taken by Citi Residential within the scope of the powers granted by the 2008 LPA from and after September 1, 2007. The 2008 LPA expressly stated that the powers it conferred on Citi Residential included the power to execute and record the assignment of any mortgage and the related mortgage note.

Since the recording of the Confirmatory Assignment, record title to the Mortgage has stood in the name of Deutsche Bank. Neither Argent nor Ameriquest claims any interest in the Samuels Mortgage and Note.

### c. The Promissory Note

The uncontroverted evidence shows, and the Debtor does not dispute, that the Samuels Note was endorsed in blank by its named payee, that possession of the note was thereafter transferred to Deutsche Bank, and that Deutsche Bank is now, and since August 18, 2005 has

---

[11] Aside from this statement, Deutsche Bank has adduced no evidence that an assignment of the mortgage has been lost; nor does Deutsche Bank allege that there exists a lost assignment or rely on any lost assignment in this motion. There is evidence of only one assignment that predates the Confirmatory Assignment: the assignment in blank that was executed immediately after origination of the loan. That assignment is in evidence here, and there is no evidence that it was ever lost. There exists a genuine issue as to whether the original assignment was lost and as to whether Ms. Price's representation to that effect was knowingly false, but, as explained below, the Court also concludes that these facts are not material to resolution of the present controversy. They present no genuine issue of *material* fact.

15

been, in possession of the note.  As a negotiable instrument, the Note may be transferred in accordance with Article 3 of the Uniform Commercial Code as enacted in Massachusetts: "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."  G.L. c. 106, § 3-205(b).  By virtue of its possession of a note indorsed in blank, Deutsche Bank is the holder of the note and as such has standing in this case to seek payment thereof.  G.L. c. 106, § 3-301 ("Person entitled to enforce" an instrument includes the holder of the instrument."); *First National Bank of Cape Cod v. North Adams Hoosac Savings Bank*, 7 Mass. App. Ct. 790, 797 (1979) ("As the holder of the note, [plaintiff] also would be entitled to all payments to be made by the mortgagors on the note.").

### d. The Mortgage

In order to establish that it holds not only the Samuels Note but also the Samuels Mortgage, Deutsche Bank follows two alternate paths.  The first relies on showing a chain of three assignments of the mortgage:  from Argent to Ameriquest, then Ameriquest to ARSI, and then ARSI to Deutsche Bank.  The problem with this strategy is that Deutsche Bank has adduced no writing evidencing the first of these transfers, from Argent to Ameriquest.  A mortgage is an interest in real property, and the statute of frauds accordingly requires that an assignment of a mortgage be in writing.  *Warden v. Adams*, 15 Mass. 233 (1818) ("By force of our statutes regulating the transfer of real estates and for preventing frauds, no interest passes by a mere delivery of a mortgage deed, without an assignment in writing and by deed.").  Deutsche Bank has adduced evidence of an agreement pursuant to which Argent agreed to transfer mortgage loans to Ameriquest, but it has adduced no writing evidencing the assignment of the Samuels Mortgage from Argent to Ameriquest.  Consequently, the chain of title is incomplete, and Deutsche Bank must, as it anticipated, fall back on its alternate strategy.

16

In the alternative, Deutsche Bank relies on the Confirmatory Assignment from Argent to Deutsche Bank, executed for Argent by Citi Residential on August 4, 2008 under a limited power of attorney. The Confirmatory Assignment expressly and in writing conveys from Argent to Deutsche Bank both the Samuels Mortgage and the Samuel Note.

The Confirmatory Assignment was not executed by Argent itself but by Citi Residential purporting to act under a limited power of attorney. Deutsche Bank contends that this action by Citi Residential should be deemed a valid and effective act by Argent for three independent reasons: Argent authorized it by the 2007 LPA; Argent ratified it by the 2008 LPA; and Argent further ratified it by not objecting to the evidence of transfer of claim filed by Citi Residential in this bankruptcy case. For the following reasons, the Court rejects the first, accepts the second, and, having accepted the second, does not address the third.

The first is that, prior to the Confirmatory Assignment, Argent had executed a limited power of attorney, the 2007 LPA, that empowered Citi Residential to execute this assignment for Argent. This reliance on an already-existing limited power of attorney is unavailing for the reasons articulated above (in the section on Burden of Proof): the 2007 LPA did not authorize Citi Residential to execute the Confirmatory Assignment.

Second, and in the alternative, Deutsche Bank relies on the 2008 LPA, executed by Argent on December 5, 2008, some four months after the confirmatory assignment. The 2008 LPA was expressly retroactive to September 1, 2007, and ratified any and all actions theretofore taken by Citi Residential within the scope of the powers granted by the 2008 LPA from and after September 1, 2007. The 2008 LPA expressly conferred on Citi Residential the power to execute and record the assignment of any mortgage and the related mortgage note, which powers, I conclude, include the power to execute the Confirmatory Assignment. By its ratification through the 2008 LPA of actions undertaken before it was issued, Argent remedied any lack of authority that may have existed when Citi Residential executed the Confirmatory Assignment. *Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, at 18 (1997) ("Where

17

an agent lacks actual authority to agree on behalf of his principal, the principal may still be bound if the principal acquiesces in the agent's action[.]").

The Debtor argues that the Confirmatory Assignment should nonetheless be deemed ineffective for three reasons. First she argues that the confirmatory assignment is invalid because the vice-president of Citi Residential who executed that assignment, a Ms. Tamara Price, indicated in a deposition in an unrelated case that (1) she signs documents presented to her for signing without knowing what she is signing and (2) she signs such documents outside the presence of a notary, after which the documents are forwarded to a notary for completion. The Debtor further contends that Price patently lied when she recited in the Confirmatory Assignment that the original assignment "was lost." The Debtor does not elaborate on the consequences or import of these allegations. The Court sees no reason that these alleged facts, if true, should invalidate the assignment. There is no evidence that Price signed *this* Confirmatory Assignment without knowing what she was signing, much less that Citi Residential did not know what it was doing by having her sign the Confirmatory Assignment on its behalf, but even if neither Price nor Citi Residential knew what they were doing, that would not invalidate the assignment. Nor does it matter that Price signed documents outside the presence of a notary and then forwarded them to the notary for completion, where the Debtor neither disputes that Price did in fact sign the Confirmatory Assignment nor offers argument that this practice was contrary to applicable law and constitutes a defect in the assignment. And any falsity or lie as to the purpose of the confirmatory assignment is immaterial: the Court knows of no requirement that an assignment contain a statement of purpose, truthful or otherwise.

Second, the Debtor argues that the PSA required that all mortgages acquired thereunder to be funneled to Deutsche Bank, as pool trustee, through the entity designated by the PSA as "depositor," ARSI. A failure to follow this protocol—such as by direct assignment of the mortgage from the loan originator to the pool trustee, bypassing the depositor—would, the Debtor contends, constitute a breach of the PSA, a breach of fiduciary obligations under the

18

PSA to investors, a breach of federal regulations, and an act giving rise to unfavorable tax consequences for the investors. The Debtor argues that because the Confirmatory Assignment is a direct assignment from Argent to Deutsche Bank that bypasses the depositor, it must be invalid. This argument falls far short of its goal. Even if this direct assignment were somehow violative of the PSA, giving rise to unfavorable tax, regulatory, contractual, and tort consequences,[12] neither the PSA nor those consequences would render the assignment itself invalid. In fact, under the Debtor's own argument, the unfavorable consequences could and would arise only if, and precisely because, the assignment were valid and effective.

Third and last, the Debtor argues very briefly that, because the execution and recording of the confirmatory assignment occurred after she filed her bankruptcy petition, these acts constituted violations of the automatic stay and of 11 U.S.C. § 549 (permitting a trustee to avoid certain postpetition transfers). In support of this argument, the Debtor cites *In re Beaulac*, 298 B.R. 31 (Bankr. D. Mass. 2003) without elaboration. She offers no explanation as to how the postpetition transfer of a mortgage already in existence and previously recorded can constitute a transfer of an asset of the estate or a violation of the automatic stay. She further suggests that she has the power to avoid the "unauthorized postpetition conveyance" but does not explain how or on what grounds and has not moved to avoid the conveyance.

I find no merit in this argument or any of its parts. The postpetition assignment of a mortgage and the related note from one holder to another is not a transfer of property of the estate. The mortgage and note are assets of the creditor mortgagee, not of the Debtor. Nor is the postpetition assignment of a mortgage and the related note an act to collect a debt; the assignment merely transfers the claim from one entity to another. The Debtor cites no particular subsection of 11 U.S.C. § 362(a), the automatic stay, that she contends such an assignment

---

[12] The Court does not conclude that the Confirmatory Assignment violates the PSA or gives rise to unfavorable tax, regulatory, contractual, or tort consequences; the debtor's argument is so lacking in detail on all these points as to constitute no real argument at all, certainly none permitting the conclusions she urges on the Court.

19

violates, and the court is aware of none.

I need not address the Debtor's further unsupported contention that the postpetition recording of an assignment of mortgage is a violation of the automatic stay[13] or of 11 U.S.C. § 549(a).[14]  As the Debtor herself acknowledges, an assignment of mortgage need not be recorded in order to be valid against the mortgagor or her grantees.  *Lamson & Co. v. Abrams*, 305 Mass. 238, 241-242 (1940); *O'Gasapian v. Danielson*, 294 Mass. 27, 32 (1933).  Therefore, even if the recording were void and ineffectual, the assignment to Deutsche Bank would still be valid.

**CONCLUSION**

For the reasons set forth above, the Court concludes that there are no genuine issues of material fact and that, on the uncontroverted facts, Deutsche Bank has established that it is in possession of the note and the owner of the mortgage securing it and therefore is entitled to summary judgment as a matter of law.  A separate order will enter allowing Deutsche Bank's Motion for Summary Judgment and overruling the Debtor's objection to its proof of claim, No. 14-2.

Date: July 6, 2009

                                        Frank J. Bailey
                                        United States Bankruptcy Judge

---

[13]  The recording of an assignment of mortgage by the assignee of the mortgagee creates a record chain of title for anyone taking through the mortgage and protects the assignee from subsequent transfers by or through the assignor.  The Debtor offers no explanation as to how the recording might be an act to collect a debt or a violation of some other section of the automatic stay.  In *Beaulac*, which the Debtor cites without discussion, the mortgage in question had been given *to* the debtor, not *by* the debtor; *Beaulac* is therefore wholly inapposite.

[14]  The debtor invokes the automatic stay and § 549(a) only defensively.